## Smith *v.* Hay, Appellant.

*Decedents' estates—Contract for maintenance—Rescission.*

Hay owed Wagner, a friend, $1,060 on notes.   In September, 1884, the parties substituted for the notes an agreement by which Hay, for the sum which he received in the surrender of the notes, agreed to furnish Wagner while he lived " with lodging, boarding and necessary clothing, and in sickness to cause him to be properly cared for, said Wagner to remain in his own house where the lodging, boarding, etc., shall be furnished him or provided for by the party of the first part."   When the agreement was made Wagner had been living in his own house for several years with a granddaughter, the sole legatee under his will, who boarded him for the rent.   In 1885, the granddaughter was succeeded in the occupancy of the house for six months by another tenant who paid the rent by boarding the owner.   In November, 1885, the granddaughter resumed the occupation of the house, and continued her former relations with her grandfather until he died in April, 1886.   It was not denied that Wagner had comfortable maintenance and proper care in sickness at the place agreed upon, and it was not shown that Hay refused any request of Wagner for board, lodging, clothing or care, or that the latter complained that the former was in any default in respect to their agreement.   *Held,* that Hay as executor of Wagner's will was not bound to charge himself with the amount of his notes for which the agreement for maintenance had been substituted.

The evidence also fails to show cause for rescission by the granddaughter as legatee.

*Evidence—Competency of witness—Act of May* 23, 1887.

In a feigned issue to determine whether the executor was indebted to the estate, testator's granddaughter and her husband, who were legatees, were competent to testify to matters occurring in the lifetime of the testator, but the executor was not competent.

Argued Oct. 10, 1892. Appeal, No. 91, Oct. T., 1889, by defendant, Peter S. Hay, from judgment of C. P. Somerset Co., Feb. T., 1888, No. 95, on verdict for plaintiff, Evora N. Smith. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Feigned issue to determine whether defendant who had received $1,060 from Elijah Wagner on September 29, 1884, was indebted to said Wagner in said sum with the interest thereon at the time of the death of Wagner on April 5, 1886.

On the trial, before BAER, P. J., the evidence was to the effect that Elijah Wagner held notes against defendant to the amount of $1,060; these notes were surrendered to defendant on the following agreement being entered into under seal:

"Article of agreement made the 29th day of September, 1884, between Peter S. Hay, of the first part, and Elijah Wagner, of the second part, witnesseth, that for and in consideration of the sum of ten hundred and sixty dollars in hand paid by the said party of second part, the receipt whereof is hereby acknowledged, doth thereby promise and agree to and with the said party of the second part shall and will from this date and as long as the said party of second part shall live furnish him with lodging, boarding and necessary clothing and in sickness cause him to be properly cared for. The said Elijah Wagner shall remain in his own house and there this lodging, boarding and so forth shall be furnished him or provided for by the said party of the first part."

Wagner died some eighteen months afterwards, leaving a will wherein plaintiff was made his sole legatee, and defendant his executor. Plaintiff excepted to defendant's account on the ground that he should have charged himself with the $1,060 as he had failed to perform his part of the contract, and this issue was framed to determine this question. The further facts appear by the opinion of the Supreme Court.

Testimony of plaintiff and her husband as to matters occurring during the lifetime of decedent was admitted under objection and exception. [1, 2]

Testimony of defendant as to such matters was rejected. [3]

Defendant proposed to prove by Valentine Hay that at the time this agreement was written it was agreed between Mr. Wagner and Mr. Hay that Mr. Hay should have somebody live in the house of Mr. Wagner and the rent to be applied to the board of Mr. Wagner; that Mr. Wagner said that as long as he kept well the rent of the house would keep him but that if he became sick or any additional support was needed, Mr. Hay must furnish it; and that the agreement was signed with that understanding between the parties. Objected to, (1) because the agreement is in writing; (2) the offer is in contradiction of the written instrument, and, therefore, is inadmissible. Objection sustained and bill sealed. [4]

The court charged in part as follows:

["It (the case) comes in the court as a feigned issue, which is to try to ascertain a particular fact. Though as it is here before you, it is nearly all law. The question is, as to whether A is indebted to B. Such a question can be raised as a feigned issue. The court, in a case like this, is the 13th juror; as a chancellor it could disregard the verdict. We will treat this case as if it were not a feigned issue.] [5] . . . .

"Now, it is not pretended to be denied that Mr. Wagner, as a consideration on his part, paid $1,060 in full performance of his part of the contract. It is equally clear, from all the evidence, that Mr. Hay, the defendant, at most only furnished tobacco, but made a total failure of furnishing any necessaries of life at any time. He, therefore, made a total failure of performance, whereby the whole object of the contract was frustrated. [By such total failure to perform his contract, Mr. Hay, in effect, renounced the obligation of the contract, and made himself liable thereby in an action to pay back the amount that had been paid him on the contract, with interest thereon from the date of the contract. But as Mr. Wagner is dead, and as the defendant in this issue is the executor, the same end may be attained by requiring the executor to account in the orphans' court for the money which he received on the contract as so much money had and received for and on

account of his decedent, inasmuch as he could not well sue himself to recover it. We, therefore, charge you, if you find the defendant furnished nothing to Mr. Wagner, the other party to the contract, that this would in effect be a total failure of performance on his part, and the verdict in such event should be generally for the plaintiff.] [6]

" We repeat: We therefore charge you, if you find that the defendant furnished nothing except the tobacco, during the one and a half years of the lifetime of Mr. Wagner after this contract was made and in force, that this would be a total failure on the part of Mr. Hay as to his part of the contract; and in such event the verdict should generally be for the plaintiff."

Defendant presented these points :

" 1. Under the pleadings and evidence in the case, the verdict must be for the defendant." Refused. [7]

" 2. Even if the jury believe, that on the 29th of September, 1884, Peter S. Hay was indebted to Elijah Wagner in the sum of $1,060, for which Mr. Wagner held notes against Mr. Hay, if the jury find that the agreement of the 29th of September, 1884, was entered into, and at that time the notes held by Wagner against Hay were surrendered to Hay, then, under the pleadings and evidence in the case, the verdict must be for the defendant." Refused. [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were, (1–4) rulings on evidence, quoting bills of exceptions but not evidence; (5–8) instructions, quoting them as above ; (9) awarding feigned issue.

*W. H. Ruppel* and *Valentine Hay*, with them *A. H. Coffroth*, for appellant, cited, on the question of evidence : Porter v. Nelson, 121 Pa. 628 ; Jackson v. Payne, 114 Pa. 67. On the construction of the contract : Perry v. Scott, 51 Pa. 119 ; Erie etc. R. R. Co. v. Johnson, 101 Pa. 555 ; Taylor v. Saurman, 110 Pa. 3 ; Bank v. Spratt, 108 Pa. 97 ; Wisecarver v. Adamson, 118 Pa. 53. On the right of the orphans' court to direct a feigned issue, Robinson v. Zollinger, 9 Watts, 169 ; Christophers v. Selden, 28 Pa. 165 ; Cobb v. Burns, 61 Pa. 278 ; Landis v. Lyon, 71 Pa. 473 ; Shertzer's Exrs. v. Herr, 19 Pa. 34.

*W. H. Koontz, F. J. Kooser* and *J. C. Lowry* with him, for appellee, cited act of May 23, 1887, P. L. 158; American Life Ins. Co. v. McAden, 109 Pa. 399; Phillips v. Meily, 106 Pa. 537.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1893:

The appellant, who is the executor of the last will and testament of Elijah Wagner who died on the fifth of April, 1886, filed an account of his administration of the estate on the first of September, 1887. To this account Evora N. Smith, who is a granddaughter of the testator, and to whom he gave all his property, filed exceptions. The only exception which has any connection with this litigation is in the words and figures following, to wit: " The executor has not charged himself with the amount of his indebtedness to said estate, consisting of cash in hand belonging to said estate, amounting to $1,125." An auditor was appointed to pass upon the exceptions, and on the hearing before him the exceptant demanded and was allowed an issue to determine whether the accountant was indebted to the testator in the sum of one thousand and sixty dollars, with interest thereon from the 29th of September, 1884. The principal questions for our consideration relate to rulings made on the trial of this issue, in which the exceptant was plaintiff and the accountant was defendant.

It appears that on the 29th of September, 1884, the testator held two notes of the appellant, amounting to the sum of $1,060, and the parties substituted for them an agreement by which the appellant, for that sum which he received in the surrender of the notes, agreed to furnish the testator while he lived " with lodging, boarding and necessary clothing, and in sickness to cause him to be properly cared for." The testator was to remain in his own house where the board, lodging, clothing and care contracted for were to be furnished. This agreement was in writing, signed by the parties and under seal. Its validity is not questioned, and by it the indebtedness represented by the surrendered notes was satisfied. Thereafter the appellant's liability to the testator was upon the agreement and measured by its terms; and while the liability was clear the amount to be expended in discharge of it was from its nature necessarily uncertain.

When this agreement was made the testator was and for several years previous thereto had been living in his own house with Evora N. Smith and her husband, who boarded him for the rent. They continued to live together in this manner until May, 1885, when the Smiths were succeeded in the occupancy of the house for six months by Simpkins, who paid the rent as they did, by boarding the owner. In November, 1885, they resumed, and continued their former relations with the testator while he lived. It is an undisputed fact that after the agreement he rented his house and boarded with his tenants as before, and it is not denied that he had comfortable lodging, board, clothing and proper care in sickness at the place agreed upon. It is not alleged that anything called for by the agreement was furnished to him at his expense except the board, and that was furnished by his tenants in payment of their rent under his voluntary arrangements with them. It is not shown or pretended that the appellant refused any request of the testator for board, lodging, clothing or care, or that the latter complained that the former was in any default in respect to their agreement. On these facts the learned court below concluded that the appellee was entitled to a finding that the appellant was indebted to the estate in the amount of the surrendered notes, with interest, on the ground that he had failed to comply with his agreement, and her exception to his account was an election to rescind it.

We think this conclusion was erroneous. There was certainly no rescission of the agreement in the lifetime of the testator, and it was therefore in full force at his death. If the appellant had refused to comply with it, and in consequence of his refusal the testator had necessarily expended for board, lodging, clothing and proper care in sickness more than the sum which constituted the consideration of it, his legal representative could maintain an action on the agreement for the whole amount so expended. If the sum paid by the testator for these matters was less than the consideration of the agreement, the recovery would be limited to the amount so paid. In either case the liability of the appellant would be measured by the damage caused by his breach of the agreement. The liability, if there is any arising from the alleged non-performance in this case, existed at the death of the testator, and his legatee

cannot enlarge it.   We think too that the evidence fails to show sufficient cause for rescission.   It was the agreement of the parties that the testator should continue to live in his own house, but it was not their intention that he should live there alone.   He was to be lodged, boarded, clothed, and in sickness cared for there.   It was proper for this purpose that a family should live in the house with him, and this is what he evidently desired and both parties intended.   The appellant was not bound to pay rent for such possession and use of the house by his own or another family as was reasonably necessary for the performance of his covenants.   If he had employed the Smiths to live there on the terms the testator made with them, such action, if satisfactory to the parties concerned, could not be justly regarded as a violation of his agreement.   Why then should his acquiescence in like action by the testator be construed as a rescission or even a breach of it?   The parties were mutually satisfied with this action, and there is nothing in the evidence which indicates that either supposed their contractual relation was destroyed or affected by it.   This relation and the friendship existing between them at and before the time the agreement was made continued while the testator lived.   It is not a sufficient answer to these facts to say that the agreement proved to be advantageous to the appellant, nor does it lie in the mouth of the legatee to allege as nonperformance that which the testator accepted as performance.   For the reasons and on the facts above stated we sustain the fifth, sixth, seventh, eighth and ninth specifications.

It was held by the learned court below that the appellee and her husband were competent to testify to matters occurring in the lifetime of the testator, and that the appellant was not.   In this there was no error.   The appellant is excluded by clause (e) of sec. 5 of the act of May 23, 1887, but the appellee is not disqualified by it.   It is admitted that the ruling complained of is sustained by the letter of the act referred to, but it is contended that it is unfair and therefore contrary to the spirit of the law to hold that one party to the issue may testify and that the other shall not.

The act of 1887 is not a step backward ; it is an advance in the line of competency and the removal of disqualifications founded on interest or policy.   We cannot construe this act

contrary to its plain provisions simply because cases may arise in which one party to the issue is by these provisions competent and the other is disqualified. When the legislature intends that the incompetency of one party to the issue shall close the mouth of the other party it will doubtless say so. We are not satisfied that any error was committed in the rejection of the offer to prove what the testator said at the time the written agreement was drawn and signed.

The first, second, third and fourth specifications are overruled.

Judgment reversed.

See also the next case.