# Shadle's Estate (No. 1).

*Evidence—Witness—Party dead—Cross-examination—Relevancy of testimony—Decedents' estates.*

Where a surviving party to a contract has been called for cross-examination as to matters occurring in the lifetime of the decedent, he becomes a fully competent witness as to other relevant matters, whether occurring before or after the death of the decedent; and this is the case although the cross-examination as to matters occurring in the decedent's lifetime was neither very extended nor very important.

The Act of May 23, 1887, P. L. 158, does not change the common-law rule that a party calling and examining generally an incompetent witness, and having the benefit of his testimony, cannot object to his competency when called by the other side as to other relevant matters.

If the witness is called for cross-examination, he may testify generally as to other relevant matters, although such matters were not touched upon in his cross-examination.

Where an administrator is sought to be surcharged by a guardian, and the administrator has been called for cross-examination as to certain matters occurring in the lifetime of the decedent, he may testify on his own behalf that he took his father, the decedent, and one of the minors to live with him, and that the father promised that he would pay board for himself and the minor; and this is the case although the subject of board money was not referred to in the cross-examination of the administrator.

In such a case if the administrator's testimony is supported by the testimony of two other witnesses as to declarations made to them by the decedent, a finding by an auditor confirmed by the court below, that a contract to pay board was made, will not be disturbed by the appellate court.

A contract to pay for services or boarding may be express and binding, although the amount is not defined. If the sum be not expressed, it will be implied to be the value.

An appellate court will not disturb a finding of fact by an auditor approved by the orphans' court, except in cases of fraud, clear mistake or manifest lack of due consideration, and especially is this true where the finding is based on direct oral testimony, and is not a mere inference from other facts.

Argued March 15, 1905. Appeal, No. 30, March T., 1905, by David Snyder, Guardian, from decree of O. C. Dauphin Co., overruling exceptions to master's report in Estate of Gideon Shadle, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and HENDERSON, JJ. Affirmed.

Exceptions to report of Eugene Snyder, Esq., auditor. Before JACOBS, J.

The facts are stated in the opinion of the Superior Court.

JACOBS, J., in delivering an opinion on the exceptions, found as to the fourth exception as follows :

4. The accountant charged himself with certain notes of Frank Shadle, deceased, held by Gideon Shadle, together with interest thereon, amounting in all to $874.34, upon which he claims commissions. It appears that on December 1, 1893, F. D. Harner, administrator of the estate of Frank Shadle, deceased, paid to Gideon Shadle the sum of $442.34, taking a receipt therefor, which was signed by Gideon Shadle and was offered in evidence before the auditor. The receipt expressly states that said payment was " to be a credit upon the notes which I and the estate of my wife, Sarah Shadle, deceased, hold against the estate of the said Franklin Shadle." The auditor, finding that the accountant here had, after the death of his father, taken out letters of administration on Sarah Shadle's estate and had charged himself with the full amount of the Sarah Shadle note and claimed credit for the same as " not collectible," reached the conclusion that the full amount of this payment should be applied upon the Gideon Shadle notes, and he, therefore, reduced the amount of the same with interest to the date of filing the account to $204.26 and allowed the accountant a commission of five per cent thereon, amounting to $10.21. The receipt clearly shows that the parties, at the time the payment was made, agreed that it should be appropriated upon all the notes, to wit: the notes of Gideon Shadle and that of Sarah Shadle. This they had a perfect right to do, and we see no reason why their express appropriation of the payment should now be disturbed. No credit appears upon the notes of Gideon Shadle, nor does it appear that any was indorsed upon that of Sarah Shadle. This probably accounts for the fact that the accountant, in his account in the Sarah Shadle estate, charged himself with the full amount of the Sarah Shadle note, with interest. He could not by so doing change the appropriation which had been expressly made by the parties at the time of the payment. It is true that the receipt does not direct specifically the amount to be appropriated to each note. But, in the absence of such express direction, we think the fair inference is that the appropriation was intended to be made proportionately to each note, including principal and interest to the date of payment.

The auditor allowed to the accountant five per cent commissions upon the amount of the two Franklin Shadle notes, after deducting the payment above referred to.  The balance due on these notes has not been paid to the accountant, but the notes are held, as we understand, by the administrator and should be set off in the distribution against the shares of Frank Shadle's children.  Under these circumstances we do not think the accountant is entitled to full commissions upon the balance due on the notes as we have directed it to be found, and we think the commission allowed by him, to wit: $10.21, is sufficient.

This conclusion would lead us to overrule the exception but for the fact that this balance must be deducted from the shares of the children of Franklin Shadle in the distribution.  The auditor seems to have overlooked this deduction in his report and we call attention to it now, so that when the matter is referred back the Franklin Shadle notes, as well as the note of S. P. Shadle, may be set off against the proper distributive shares.

The exception is sustained to this extent: that the auditor is directed to deduct from the notes held by Gideon Shadle against the estate of Franklin Shadle only such proportion of the payment made on December 1, 1893, as the amount of said notes with interest to that date bears to the aggregate amount of said notes and interest and the note of Sarah Shadle with interest to the same date.

*Errors assigned* were in overruling exceptions to auditor's report.

*W. M. Hargest*, of *Hargest & Hargest*, with him *Michael E. Stroup*, for appellant.—Where the claim is made for services or boarding, which are presumed to be paid periodically, the presumption of periodical payments must be rebutted by positive testimony, even if the contract has been proven: Coulston's Estate, 161 Pa. 151; McConnell's App., 97 Pa. 31; Conaughton's Est., 12 Pa. C. C. Rep. 590; Bash v. Bash, 9 Pa. 260; Leidig v. Coover, 47 Pa. 534; Murphy v. Corrigan, 161 Pa. 59; Whitmer's Estate, 19 Pa. C. C. Rep. 533.

The case at bar is not as strong in its facts as the cases of

Ulrich v. Arnold, 120 Pa. 170; or Zimmerman v. Zimmerman, 129 Pa. 229, in both of which the Supreme Court held the testimony insufficient to establish such a claim.

Stale claims against the decedent's estate can only be allowed by evidence of the clearest and most unexceptional character: McQuinn's Estate, 43 Legal Int. 184; Weaver's Est., 182 Pa. 349.

*Edwin W. Jackson,* for appellee.—It is submitted that this testimony, and the circumstances of the case, bring the claim fully within the ruling of Miller's Appeal, 100 Pa. 568.

The testimony of S. P. Shadle, the claimant, establishes an express contract.

OPINION BY RICE, P. J., March 12, 1906 :

Gideon Shadle, the decedent, left to survive him S. P. Shadle, a son, and three minor children of a deceased son, of whom David Snyder, the appellant, was guardian. S. P. Shadle was appointed administrator, and to his first and final account numerous exceptions were filed by the guardian. At the first hearing before the auditor appointed to pass upon the exceptions, " and make distribution of the balance in the hands of the administrator to those entitled thereto," S. P. Shadle was called as if under cross-examination and testified at length in answer to questions put by counsel for the exceptant concerning the items of the account and the matters referred to in the exceptions. Some of these exceptions were as to surcharges which the exceptant claimed should be made. At a later hearing he was again called and cross-examined by the exceptant's counsel as to these matters. At a still later hearing the accountant testified, under objections by the exceptant's counsel, in support of an offer made by the accountant's counsel which we quote : " I propose by the witness to prove that after the death of his mother, his father, who had taken Gideon Shadle, Jr., to raise, came to his hotel, bringing with him Gideon, Jr., to board with him, and that at that time a contract was made between them for the payment of their boarding ; for the purpose of establishing an additional claim by the accountant against the estate." The auditor held that the accountant was not a competent witness as to this matter and, therefore, when he

made up his report, rejected this testimony from consideration, but concluded that the testimony of other witnesses was sufficient to establish the claim. The court overruled the exception to the auditor's conclusion of fact, but held that inasmuch as the exceptant had called the accountant for cross-examination the latter became a fully competent witness in his own behalf as to all relevant matters, and that this was a relevant matter. This is the first question to be considered.

We are not prepared to decide that the accountant would not have been competent to testify in his own behalf as to matters occurring in the lifetime of the decedent, even if the party calling him for cross-examination had confined his examination strictly to matters occuring after the death of the decedent. But it is unnecessary to discuss, or express a decided opinion upon, that question; for while the cross-examination, in the main, related to the latter, yet it was not strictly confined thereto, but touched on some matters occurring in decedent's lifetime. His cross-examination as to these matters was not very extended nor very important, it is true, but under all the authorities he thereby became a fully competent witness as to other relevant matters, whether occurring before or after the death of the decedent: Corson's Est., 137 Pa. 160; Boyd v. Conshohocken Worsted Mills, 149 Pa. 363; Hambleton's Est., 166 Pa. 500; Danley v. Danley, 179 Pa. 170; Watkins v. Hughes, 206 Pa. 526; Mothes's Est., 29 Pa. Superior Ct. 462.

Was this claim a relevant matter within the meaning of the statute? Prior to the enabling evidence statutes it was held in Pennsylvania that if a witness, disqualified by reason of interest, was called and examined generally by a party, it did not lie in the mouth of that party to object to him as incompetent when called by his adversary to testify to other facts: Turner v. Waterson, 4 W. & S. 171; Stockton v. Demuth, 7 Watts. 39. In Floyd v. Bovard, 6 W. & S. 75, Chief Justice GIBSON commented on the English practice under which the new matter might be brought out under cross-examination, and after showing that under the practice here the cross-examination of a witness must be confined to the subject-matter of his direct testimony, concluded, both upon reason and authority, that the party first calling him thereby rebutted the presumption arising from interest and made him a competent witness

for the adverse party.   The principle was carried still further
in Patterson v. Wallace, 44 Pa. 88, where it was held that an
objection to a witness called by one party, if known to the op-
posite party, must be made before he is examined; if he is
permitted to testify without objection, his competency cannot
afterwards be objected to when recalled for examination, at any
subsequent stage of the trial.   Substantially the same was held in
Dean v. Warnock, 98 Pa. 565.   The act of 1865 was a depart-
ure from the common law, in that it enabled a party to compel
any adverse party, etc., " to testify, as a witness in his behalf,
in the same manner and subject to the same rules as other wit-
nesses," but the common-law rule above referred to was applied
in its construction.   In Seip v. Storch, 52 Pa. 210, decided in
1866, Justice READ, speaking for the court, referred to the rule
established by these earlier cases, and then said: " In constru-
ing, therefore, the remedial Act of March 27, 1865, P. L. 38, we
must apply the well-established principle, that, if a party puts
an incompetent witness on the stand, by exercising any power
which he possesses over him, he makes him an entirely compe-
tent witness in the cause, to be used as such by either party."
To the same effect is Bennett v. Williams, 57 Pa. 404.   Fol-
lowing this ruling it was held in Forrester v. Torrence, Adm. of
Kline, 64 Pa. 29, that where the plaintiff examined one of the
defendants as a witness at an arbitration, this rendered her
competent on her own behalf on the trial of the same case in
court.   SHARSWOOD, J., said: " There are good reasons for
thus holding; for by calling and examining the witness, the
plaintiff fully accredited her as worthy to be believed.   Having
done so once in the cause, he ought not to be allowed to object
to her afterwards.   Such a course would be likely to mislead
his opponent, to induce him to believe that she would be called
again, and to make his preparations on that expectation."   It
is true it was decided in Alcorn's Exr. v. Cook, 101 Pa. 209,
that the provisions of the act of 1865 had no application to
suits by and against administrators, and in Tinstman v. Crou-
shore, 104 Pa. 192, that the right to cross-examine an adversary,
conferred by the second section of the act of 1869, did not ex-
tend to such suits, but in neither of these cases did the court
question that at common law a party calling and examining
generally an incompetent witness and having the benefit of his

testimony could not object to his competency when called by the other side as to other relevant matters.   The Act of May 23, 1887, P. L. 158, is not a step backward; it is an advance in the line of competency and the removal of disqualifications founded on interest or policy : Smith v. Hay, 152 Pa. 377.   In a very recent case Justice BROWN said that the act had been uniformly interpreted "in the light of the literal meaning of its words" and that under its provisions "competency of witnesses in civil cases is the rule and incompetency the exception :" Pattison v. Cobb, 212 Pa. 572.   The courts have no authority to construe the act contrary to its plain provisions, and thus add to the exceptions to the general rule of competency, in the vain effort to put the parties in interest in every litigation that may arise upon an equal footing: Foringer v. Sisson, 14 Pa. Superior Ct. 266 ; Smith v. Hay, 152 Pa. 377. The plea that where death has closed the mouth of one party to a thing or contract in action the law will preserve equality by excluding the living party thereto from testifying regarding it, is good only so far as it is sustained by the express words of the act.   Under clause "e" of sec. 5, S. P. Shadle would not have been competent to testify to the alleged contract between him and his deceased father; but, exercising the right which the 7th section gave him, the only other party interested in the proceeding called him as if under cross-examination. Having thus obtained the benefit of the accountant's testimony, so far as it was favorable to him, without being concluded by it so far as it was unfavorable, we fail to see what principle of natural justice, or policy of the law, would be offended by permitting him to testify in his own behalf as to other facts relevant and material in the audit then pending.   It would not have been regarded as in contravention of the principles of the common law, notwithstanding all the strictness with which it held interest as disqualifying to testify, and, as Justice McCOLLUM said, the act of 1887 "is not a step backward."   Its plain and unambiguous language is "but such person so cross-examined shall become thereby a fully competent witness for the other party as to all relevant matters, whether or not these matters were touched upon in his cross-examination."   Relevant to what ?   Clearly it is not essential that his testimony relate specifically to the subject-matter of his cross-examination ; the

words of the act settle that question. But it is argued that as the cross-examination of the accountant related solely to the issue made by the account and the exceptions, therefore, his testimony in his own behalf should have been confined to the same issue. In considering this proposition it is to be observed that the only parties interested in the final result of the audit were the accountant and the minors of whom the exceptant was the guardian, and that while under the terms of the auditor's appointment the ascertainment of the assets of the estate in the hands of the accountant was necessarily involved, the ultimate purpose of the audit was the distribution of them to and among the persons entitled. The claim of the accountant was clearly a relevant matter in the proceeding. The fact that he did not allude to it in his account, and that it was not " touched upon " when he was cross-examined by the exceptant, cannot be made the ground for excluding his testimony regarding it, without detracting from the words of the statute, " a fully competent witness as to all relevant matters, whether or not these matters were touched upon in his cross-examination." We conclude, therefore, that he was a competent witness as to this matter.

The testimony of the accountant was to the effect that after the death of his mother his father, the decedent, came to live with him at his hotel, bringing with him a grandson, toward whom he stood in loco parentis, and that they continued to board with him until the decedent's death. As to the contract between them he testified : " He said he would pay me for the boarding, as there was enough left, and that I should not do this for nothing, and that he would pay me for boarding them." " Q. By them he meant who? A. Why, my father and Gideon, Jr." On cross-examination he testified : " Q. Your father, Mr. Shadle, told you that he would pay you for the boarding of himself and Gideon ? A. Yes, sir. Q. Did he specify the amount which he would pay ? A. No. Q. He seemed satisfied that there was enough left to pay you ? A. He said you need not to keep me for nothing, you need not to keep us for nothing, I have got so much left that I will pay ; he says you need not keep me for nothing, and he says, I will pay you." This testimony was corroborated by the testimony of Jonas Garman and L. H. Zeigler as to declarations which the decedent made

to them, and it was not contradicted.   Claims of this character are to be rigidly scrutinized under all circumstances, and especially under such circumstances as were developed in this case.   Nevertheless, there is no valid principle upon which it can be declared that under no circumstances are they to be allowed.   The rule upon the subject was thus laid down in Miller's Appeal, 100 Pa. 568: "Between parent and child the rule is, that there can be no recovery for services, boarding, or the like, in the absence of an express contract to pay therefor. The degree of proof to establish it cannot be the same in all cases. . . . The question always is, whether the parties contemplated payment and dealt with each other as debtor and creditor.   A son who takes his decrepit parents into his house and supports them, is presumed to do so from the promptings of natural affection; no contract is implied.   But if the father, before they go and afterward, repeatedly declares that he was to pay for their board, such declarations are evidence, and with the circumstances may be so direct and strong as to compel belief that he expressly agreed to pay for it.   Loose declarations made to the son or others will not answer.   That which may be only the expression of an intention to compensate is not evidence of an agreement to compensate.   If he intended to pay, and often said so to others, he was not bound.   It must appear that he proposed to assume a legal obligation, capable of being enforced against him."   It was further decided in the same case that a contract to pay for services or boarding may be express and binding, without the terms being defined.   "The gist is an actual agreement to pay, and if the sum be not expressed it will be implied to be the value."   It is unnecessary to cite other cases upon the subject, or to discuss those cases bearing more particularly upon the question of the wages of domestic servants.   Taken as a whole the testimony, if believed, was sufficient to overcome the presumption that the boarding of the decedent and his grandson and his nurse was furnished gratuitously, or from promptings of filial affection, or merely from expectation of a legacy, and to support a finding that it was furnished pursuant to an express contract.   The general rule is, that an appellate court will not disturb a finding of fact by an auditor, approved by the orphans' court, except in cases of fraud, clear mistake or manifest lack of due considera-

tion, and especially is this true where the finding is based on direct oral testimony, and is not a mere inference from other facts. We see no reason to depart from that rule in this case, or to hold that the finding was clearly wrong.

The question raised by the fifth assignment of error was fully considered by the learned judge of the orphans' court in that part of his opinion which relates to the fourth exception of the accountant to the auditor's report. It involves a question of fact, and we are of opinion that this was correctly determined by the court. All that need be said concerning it is contained in that portion of the learned judge's opinion above referred to.

The decree is affirmed and the appeal dismissed, the costs of the appeal to be paid by David Snyder, guardian.