## Stevens Estate

*Sidney Bernstein* and *Alan R. Smukler*, for petitioners.

*S. Regen Ginsburg, William Jay Leon* and *Albert Bartolomeo*, for respondent.

*Herbert W. Salus, Jr.*, for Commonwealth.

SHOYER, J., October 11, 1966.—By decree dated August 16, 1962, this court, pursuant to a petition filed by the coexecutors of the estate of Samuel Stevens, deceased, awarded a citation directed to Bessie Stevens and Walnut Street Federal Savings and Loan Association to show cause why . . .

"4. All . . . property, real or personal, held by said Bessie Stevens, rightfully due the Co-Executors,

should not be turned over to said estate for administration . . ."

The petition alleges that Samuel Stevens died October 4, 1959, leaving his will dated September 18, 1956, upon which letters testamentary were granted by the register of wills on October 14, 1959, to Edward Stevens and Benjamin Dennis, executors; that, by his will, decedent gave his entire estate in three equal parts to his daughter, Ida Dennis, his daughter, Sylvia Stern, and to his son, Edward Stevens (he gave his son, Matthew K. Stevens, and his daughter, Bessie Stevens, one dollar each, because they are "fairly well fixed financially") ; that decedent was survived by his four children, Ida, Sylvia, Bessie and Edward (his son, Matthew, predeceased, having died March 11, 1957).

The petition further avers, in paragraph 4, that, at the time of his death, decedent owned as "tenants in common" with Bessie Stevens the following real estate in Philadelphia, viz: 1632 West Parrish Street, 1625 Ogden Street, 1511 Brown Street and 1527 Swain Street.

"5. That the following real estate in Philadelphia was owned by decedent alone and transferred of record on October 10, 1959 to Ida Dennis:

"1509  Brown  Street
"1507  Brown  Street
"1532  Ridge  Avenue
"1800  Vineyard  Street
"1627  Ogden  Street

"6. That the following real estate in Philadelphia was owned by the decedent and Bessie Stevens, daughter, and sold on the dates shown:

| | |
|---|---|
| "1912 Poplar Street | 11/28/50 |
| "855 Uber Street | 8/22/51 |
| "1929 Ridge Avenue | 1/3/45 |
| "1638 Parrish Street | 1/19/50 |
| | [corrected 1/19/56] |

"7. That mortgages secured by the following properties in Philadelphia were owned by the decedent on the date of his death, together with Bessie Stevens, as tenants in common:

"1809 Gorgas Lane

"855 Uber Street

"8. That on the date of decedent's death, there was on deposit the sum of $8,721.17 at the Walnut Street Federal Savings and Loan Association, registered in the name of Sam Stevens and Bessie Stevens as joint tenants with right of survivorship".

The petition further alleges that Bessie Stevens resided with decedent at the time of his death and for a long period prior thereto; that she managed his financial affairs, collected rents for the several properties, kept books of account; that decedent was advanced in years, in poor health, illiterate and dependent upon Bessie Stevens for nursing care and his meals; that from 1937 to the date of his death, Bessie Stevens had full control of the business and financial affairs of decedent, "through the use of such threats that she would leave the decedent and take up residence elsewhere; that she would not prepare the decedent's meals, and on occasions, did in fact fail to cook for the decedent and otherwise provide for his needs . . . and . . . [she] further destroyed the free will and agency of the decedent by limiting his contact with the other children and barring visitors to the decedent's home".

Petitioners averred in paragraph 14 that the jointly held assets above stated were purchased with decedent's funds alone, and were titled in joint names with survivorship rights as a result of either mistake and/or duress under influence exerted by Bessie Stevens upon decedent. Paragraph 15 avers that the rents and other properties owned by decedent were not applied to decedent's account, and that Bessie Stevens by du-

ress and undue influence caused the bank account to which they referred to be registered in joint names with right of survivorship. In paragraph 16, that by reason of the confidential relationship, Bessie Stevens converted to her own use other rentals and profits belonging to decedent.

The Walnut Street Federal Savings and Loan Association filed its answer in which it averred, inter alia, that on October 13,1955, with a deposit of $7,534.28, Sam Stevens and Bessie Stevens opened an account as "Joint Tenants with the Right of Survivorship and not as Tenants in Common", and at the time of Sam Stevens' death the account contained $8,721.17.

Bessie Stevens in her answer averred in paragraphs corresponding to the petition: (4) that the four parcels of real estate were owned by decedent and herself as joint tenants with right of survivorship, and not as averred in the petition, as tenants in common; (5) admitted that on October 10, 1959, the five parcels of real estate itemized in the petition were owned and transferred by decedent to Ida Dennis; (6) admitted the averments of that paragraph of the petition, except that premises 1638 Parrish Street was sold January 19, 1956, not January 19, 1950, as averred in the petition; (7) admitted that the mortgages on 1809 Gorgas Lane and 855 Uber Street were held by decedent and Bessie Stevens as tenants in common; (8) averred that the deposit contained in the Walnut Street Federal Savings and Loan Association was at all times owned by decedent and Bessie Stevens as joint tenants with right of survivorship, and at decedent's death his personal representatives had no rights thereto; (9) denied that she managed all of decedent's assets, and averred that her father controlled and managed all of his own assets; (10) admitted that she resided with her father for a long period of time before his death; admitted that she kept books of ac-

count which accurately recorded the transactions and which were approved by decedent. In paragraphs 11 to 16, inclusive, she categorically denied that the jointly owned assets were purchased with decedent's funds alone or that they were titled in joint names by mistake, duress or undue influence, or that decedent had poor eyesight, was hard of hearing, illiterate or that his property was under her control or dependent upon her, or that she restrained or prevented him from seeing or visiting his other children, friends or relatives; denied that the assets referred to in the petition were titled in joint names as a result of mistake, duress or undue influence; and she averred that the jointly held assets were acquired either with jointly owned funds or entirely with her funds, and she denied that she ever converted any of her father's assets to her own use.

By decree dated December 17, 1962, the petition and answers were referred to the judge who will audit the account of the executors, for hearing.

The "First and Partial" account by the executors was thereafter filed, and is being audited and adjudicated contemporaneously herewith. It is a "Nothing-Nothing" account. The accountants averred therein they have received no assets belonging to decedent and they do not take credit for any payments. However, they list in principal personalty, as being claimed by them, a balance of $8,721.17 in Walnut Street Federal Savings and Loan Association, account no. S13074; account no. 16126 of First Federal Savings and Loan Association, balance $696.01, both of which accounts are in the name of decedent and Bessie Stevens; a bond and mortgage in amount of $3,150 given by Louis Bethea to decedent and Bessie Stevens on August 22, 1951, secured on premises 855 Uber Street, Philadelphia, providing for monthly instalments of $35; and $1,000 bond and mortgage given by Arthur

and Martha Grossman on January 7, 1952, to decedent and Bessie Stevens, secured on premises 1809 Gorgas Lane, Philadelphia; a total personalty claimed of $13,567.18; premises 1632 Parrish Street, at a value of $3,500; premises 1625 Ogden Street, at a value of $3,850; premises 1511 Brown Street, at a value of $2,500; and premises 1527 Swain Street, at a value of $5,500; total real estate claimed, $15,350. . . .

At the conclusion of the hearings and after argument, Bessie Stevens was directed by order dated December 14, 1965, to file a full accounting prior to February 1, 1966, of all receipts, disbursements and distributions by her and of any balances existing with respect to any real and/or personal property owned by or registered in the name of Samuel Stevens alone, or with Bessie Stevens or others at the time of the death of Samuel Stevens on October 4, 1959. Bessie Stevens filed written objections to this order and, subject thereto, filed her account.

The account shows, inter alia, as of May 13, 1964, with respect to the two mortages held by decedent and Bessie Stevens as tenants in common: (1) as to the $3,150 mortgage on premises 855 North Uber Street, there was a balance of principal and interest of $741.-70 owing, upon which she collected a total, principal and interest, of $761.56; and (2) as to the $1,000 second mortgage on premises 1809 Gorgas Lane, there was a balance owing of $800, on which she collected a total of $380; and after paying $34.36 personal property taxes on these mortgages for the years 1960, 1961, 1962 and 1963, there was a balance of $1,107.20, of which the sum of $553.60 is due the estate of Samuel Stevens.

At a further hearing held on April 11, 1966, counsel for petitioners orally objected to the account filed by Bessie Stevens for three reasons, viz: (1) the account filed by Bessie Stevens does not include receipts

of income from premises 1507-09 Brown Street, 1532 Ridge Avenue, 1800 Vineyard Street and 1627 Ogden Street (title to which parcels were transferred by Samuel Stevens to Ida Dennis by deeds dated September 18, 1956, and recorded October 10, 1959) ; (2) the account does not show receipts of income after decedent's death, and (3) the account fails to show starting balances. . .

. 4 Hunter (2d ed.) title "Orphans' Court," §§4(a) and 4(b), states the rule that the orphans' court has exclusive jurisdiction to determine ownership of funds in joint savings accounts in the name of decedent and another at decedent's death: Berdar Estate, 404 Pa. 93; Hallman v. Carr, 404 Pa. 216; Gudleski v. Gudleski, 405 Pa. 441.

In Webb Estate, 391 Pa. 584 (1958), respondent, a realtor, who, after decedent's death continued to collect rents from decedent-owned real estate, was ordered to turn the rents over to decedent's personal representative. The Supreme Court sustained this court's holding that the realtor was the agent of the personal representative and this court had jurisdiction under section 301(13) of the Orphans' Court Act of August 10, 1951, P.L. 1163.

Reifsnyder's Estate, 13 Fiduc. Rep. 565 (1964), holds that the orphans' court has jurisdiction to determine title to real and personal property where the title was registered in the name of decedent at the time of her death. See also Tallarico v. Belotti, 414 Pa. 535 (1964) ; Coble v. Arnold, 29 D. & C. 2d 651.

The general rule appears to be that in transfers from parent to child, a presumption of fairness arises by reason of the relationship of the parties. The invalidity of the gift is not to be assumed, and facts establishing undue influence or that the parties did not deal on equal terms must be shown affirmatively by those attacking the transaction. This is true even

though decedent is old and feeble at the time of the alleged gift: Northern Trust Co. v. Huber, 274 Pa. 329; 3 Hunter (2d ed.) Title "Gifts Inter Vivos", p. 124, citations. . .

"Between parent and child, the evidence necessary to show a confidential relation must be certain, and care must be used not to confound acts springing from natural love and affection with confidential relation: Null's Est., 302 Pa. 64; Gerner v. Kespelher, 351 Pa. 649 [and other citations]": 3 Hunter (2d ed.), p. 126.

In Worrall's Appeal, 110 Pa. 349, 364, our Supreme Court said:

"There is nothing in the relation of parent and child, or other near relation, to preclude one from accepting a benefit from the other in the shape of a gift, or of a contract upon more advantageous terms than would have been granted to a stranger, and the fact that such a gift has been conferred, or contract made, will not warrant an inference that it has been procured by undue influence" . . .

Except for the testimony by Samuel Pepper, Esq., a witness called by petitioners, who testified as to a single transaction which he had with decedent in the summer of 1956 (to be discussed below), and savings and loan association records produced by the bank teller, the only other evidence was the testimony by the two petitioners. The deeds of conveyance referred to, or the record of them, was not produced, nor was any explanation offered for not calling other witnesses who were alleged to have been present when certain incidents were testified to have occurred.

The testimony by petitioners was, in material respects, conflicting with the allegations in their petition, openly biased, evasive and contradictory.

Although petitioners admit that respondent was decedent's only unmarried daughter, who, following the death of decedent's wife in 1930, continuously

lived with her father, and without the aid of domestic help took care of all of his personal needs, cooking and cleaning, and he refused to live with any of his other four children; and although they reluctantly admitted on crossexamination that decedent on several occasions gave his other children substantial portions of his real and personal property as recently as September 1956, without any consideration other than love and affection and free of any appearance of coercion or undue influence, they charge respondent with taking unfair advantage of decedent. It was pointed out in Irish v. Smith, 8 S. & R. 573, that a witness who testifies as to mental incapacity of testator may be asked on crossexamination whether she had not accepted a devise under the will, for in such case "her words and actions are at variance".

The testimony by Mr. Pepper as to the single 20-minute conference which he had with decedent in August 1956, and with decedent's son, Matthew, the lawyer and Ida Dennis, decedent's daughter, indicates that decedent's family knew of the purported incident. Yet, although more than three years elapsed after decedent's visit to Mr. Pepper, no action of any nature was taken by decedent or by any of his children or others on his behalf to recover from Bessie Stevens or from decedent's other children, Ida, Sylvia or Edward, any of the property which decedent transferred to any of them.

The evidence, such as it is, establishes, and I find as a fact, that decedent was mentally and physically alert and able to transact his day-to-day business until the time of his death.

I find that decedent was a man of strong will and was neither coerced nor restrained by Bessie Stevens in obtaining, managing or disposing of his assets as he saw fit.

I further find, although in light of the above find-

ings this may be unnecessary, that there was no confidential relationship between decedent and his daughter, Bessie.

In Shydlinski v. Vogt, 406 Pa. 534, 538 (1962), where a father who was old, feeble and physically infirm had made conveyances to a daughter to whom he had given a general power of attorney, thereby giving her control over his affairs, the court, after assuming arguendo that there was a confidential relationship established, refused to order a reconveyance. The court there said:

"The evidence is clear that appellee cared for the decedent for nearly three years at great personal sacrifice and that he was disposed to reward her by making a gift to her of the real estate here in dispute. This gift did not render the donor destitute, as was the case in Palmer v. Foley, supra, and, in fact, there was evidence from which the court below could have found that the donor made cash gifts to his other children, and still retained some $3,000 or more for his own use".

I further find as a fact that the credible evidence does not establish that respondent, Bessie Stevens, exercised undue influence over her father, and I hold that the burden of proof which the law imposes upon petitioners has not been met by them. . . .

Timely objection was made to the competency of the personal representatives to testify under the Dead Man's Rule. A serious question arises because of their adverse pecuniary interest. In the one case, an executor is a residuary legatee under the will, and in the other, his wife is a residuary legatee. See Pronzato v. Guerrina, 400 Pa. 521 (1960); Gallagher v. Rogan, 330 Pa. 545; Weaver v. Welsh, 325 Pa. 571; Smith v. Hay, 152 Pa. 377.

However, in view of the findings made above, it is not necessary to pass upon the competency of these witnesses.

### DECREE

And now, October 11, 1966, upon consideration of the foregoing:

1. Bessie Stevens is ordered and directed to pay to the personal representatives of the estate of Samuel Stevens, deceased, the sum of $553.60, together with interest thereon at the rate of six percent per annum from May 13, 1964, as above, and to account to said personal representatives for such other receipts by her with respect to mortgages held by Bessie Stevens and Samuel Stevens, deceased, on premises 855 North Uber Street and premises 1809 Gorgas Lane, Philadelphia. . . .

3. Except as above, the petition for a turnover order against Bessie Stevens and Key Savings and Loan Association is dismissed.

4. Except as above, petitioners' application for a supplemental order against respondent, Bessie Stevens, for further accounting, is dismissed.